IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

WACHOVIA COMMERCIAL MORTGAGE,
INC., d/b/a Wachovia Small Business Capital,
and formerly known as The Money Store
Commercial Mortgage,

       Plaintiff,

vs.
                                  Civ. No. 05-2257-SHM-tmp

SUN ENTERPRISES, INC., AMIT K. RAY,
and TAPATI RAY,

       Defendants.

## DECLARATION OF JAMES COSTELLO

I, James Costello, state the following:

    1.     I am Special Assets Manager of Wachovia Commercial Mortgage, Inc., doing

business as Wachovia Small Business Capital ("Wachovia"). I have held that position since

September 2005. I am over 21 years of age and am otherwise competent to submit this

Declaration. I submit this Declaration in support of the motion of Wachovia for summary

judgment in this case. I submit this Declaration based upon my personal knowledge as

well as the information contained in the business records of Wachovia. If called upon to

testify, I could and would testify competently regarding the matters contained in this

Declaration.

    2.     In 1995, Sun Enterprises, Inc. ("Sun Enterprises"), and Amit K. Ray ("Mr.

Ray") and Tapati Ray, M.D. ("Dr. Ray") applied for a small business loan with Wachovia,

**EXHIBIT**

**A**

for the purchase of the "Shelby Inn," located at 1970 East Shelby Drive, Memphis, Tennessee (the "Hotel Property"), to be guaranteed by the United States Small Business Administration ("SBA").

3.      The loan application required SBA approval.  The SBA required as a condition of the loan that it must be collateralized by personal guarantee or guarantees on the obligations of the respective business as a condition of the loan.

4.      On or about December 28, 1995, Sun Enterprises executed and delivered to The Money Store Commercial Mortgage, Inc., which was later acquired by Wachovia (hereinafter, thus, referred to as "Wachovia"), a Promissory Note in the principal amount of $781,000.00 (the "Note"), for the purchase the Hotel Property.  A copy of the Note is attached hereto as Exhibit "1."

5.      In connection with the transaction, Sun Enterprises executed a Commercial Loan and Security Agreement ("Loan Agreement") and first deed of trust ("Deed of Trust").  A copy of the Loan Agreement is attached hereto as Exhibit "2," and a copy of the Deed of Trust is attached hereto as Exhibit "3."

6.      In 2001, Sun Enterprises filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Western District of Tennessee, Case No. 01-37899 DSK, which was subsequently dismissed on March 31, 2003.

7.      On July 1, 2003, upon Sun Enterprises' failure to pay sums due under the terms of the Note and Loan Agreement, Wachovia declared the Note to be in default and

accelerated same, by way of separate letters to Sun Enterprises and its Guarantors, Mr. Ray and Dr. Ray. A copy of the July 2003 letter to Sun Enterprises, the July 2003 letter to Mr. Ray, and the July 2003 letter to Dr. Ray, are attached hereto as Collective Exhibit "4."

8.     At the time of the initial default, Sun Enterprises and its Guarantors, Mr. and Dr. Ray, owed a principal balance of $740,575.67, together with accrued interest in the amount of $49,467.33, for a total of $790,043.00. At the time of the initial default, that interest was continuing to accrue on the principal balance at the rate of $128.57 per diem.

9.     Pursuant to its rights under the Loan Agreement, Wachovia has made certain payments for delinquent real and personal property taxes concerning the Hotel Property, totaling $143,119.68, individually enumerated as follows: $3,285.52 paid to Bob Patterson, Trustee, for delinquent Shelby County personal property taxes; $68,095.38, paid to Bob Patterson, Trustee, for delinquent Shelby County real property taxes; $66,308.13, paid to the City of Memphis, for delinquent City real property taxes; and $4,930.65, paid to the City of Memphis, for delinquent City personal property taxes. A copy of the checks and check stubs for these payments is attached hereto as Collective Exhibit "5."

10.     In the July 2003 letters to Sun Enterprises, Mr. Ray, and Dr. Ray, Wachovia also demanded immediate payment of $143,119.68 for reimbursement of delinquent personal and real property taxes paid by Wachovia to the City of Memphis and Shelby County concerning the Hotel Property, and expenses and attorneys fees incurred to that date totaling $40,587.48.

11.     Upon suggestion of Mr. Ray, Wachovia entered into an agreement

("Wachovia-Sandhya Hotels Agreement") to sell its interest in the Note and Loan Agreement to Sandhya Hotels, LLC ("Sandhya Hotels"), as guaranteed by Charles Morais and Sunil Mir (collectively, "Sandhya Hotels Guarantors") in October 2003, upon the satisfaction of the obligations undertaken by Sandhya Hotels and the Sandhya Hotels Guarantors therein, including monthly payments and a final lump sum payment of $500,000.00. A copy of the Wachovia-Sandhya Hotels Agreement is attached hereto as Exhibit "6."

12.     Under the Wachovia-Sandhya Hotels Agreement, Wachovia agreed to forebear instituting foreclosure on the Deed of Trust or taking any other action that would interfere with Sandhya Hotels' right to purchase the Note until after the purchase date set forth therein.

13.     The Wachovia-Sandhya Hotels Agreement did not release Sun Enterprises from its obligations under the Note, Loan Agreement, or Deed of Trust, nor did it release Mr. Ray or Dr. Ray from their guarantees.

14.     In late October 2004, Wachovia, by letter, notified Sun Enterprises, Mr. Ray, and Dr. Ray that Sandhya Hotels had failed to make the final $500,000 lump sum payment for the purchase of the Note, reaffirmed the default of Sun Enterprises, Mr. Ray, and Dr. Ray under the Note and Loan Agreement, and advised that legal action would be necessary to enforce the obligations of Sun Enterprises, Mr. Ray, and Dr. Ray if a satisfactory resolution could not be reached. A copy of the October 2004 letter to Sun Enterprises, Mr. Ray and Dr. Ray is attached hereto as Exhibit "7."

15.    Despite being given due written notice of their defaults, and ample opportunities to cure same, Sun Enterprises and its Guarantors, Mr. Ray and Dr. Ray, have failed to cure their breaches of their obligations under the Note and Loan Agreement.

16.    The principal balance due on the Note as of July 30, 2006, is $740,575.67, together with accrued interest in the amount of $220,931.17, for a total unpaid balance of $961,506.84.  Interest continues to accrue on the principal balance at the rate of $128.57 per diem.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated:  July 5, 2006.

James Costello

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Declaration was forwarded via the Court's electronic filing system to Eugene G. Douglass, whose address is 2820 Summer Oaks Drive, Bartlett, Tennessee 38134, *Attorney for Defendants,* on this the 7th day of July, 2006.

s/ Timothy D. Patterson
Timothy D. Patterson

LOAN NUMBER     570-103-00001010-0

# THE MONEY STORE COMMERCIAL MORTGAGE INC.
## PROMISSORY NOTE

$781,000.00

Memphis, Tennessee
(City & State)

12/28, 19 95

     **FOR CONSIDERATION RECEIVED SUN ENTERPRISES, INC.**, ("Borrower") having a mailing address at <u>1970 East Shelby Drive, Memphis, Tennessee</u> (hereinafter referred to as "Borrower"), promises to pay to the order of The Money Store Commercial Mortgage Inc., a New Jersey corporation, having an address at P.O. Box 162247, Sacramento CA 95816-2247 (hereinafter referred to as "Lender"), at such place as the Lender or subsequent Holder (hereinafter collectively referred to as "Holder") hereof may from time to time designate in writing, the principal sum of **SEVEN HUNDRED EIGHTY-ONE THOUSAND** Dollars, in lawful money of the United States of America, with interest thereon to be computed from the date of each advance to the undersigned at the Applicable Interest Rate (hereinafter defined), and to be paid in installments as follows:

     One payment of interest only shall be due and payable on the first day of the month following disbursement, followed by installments of principal and interest each in the initial amount of $7,379.00 beginning on the first day of the second month following disbursement, and continuing due and payable monthly thereafter **until Thirty (30)** years from date of first disbursement. Each payment will be credited first to interest accrued to the date of receipt and application of payment and the remainder, at Lender's option, first to any accrued unpaid late charges and second, to the outstanding principal balance.

     Interest on the principal sum of this note shall be calculated on the basis of a three hundred sixty (360) day year and will be charged on that part of principal which has not been paid. It will be imposed for the actual number of days elapsed. **This interest calculation will result in a greater interest rate than if a 365 day year had been utilized.**



SUB-EXHIBIT

A-1

1

MICROFILMED

The term "Applicable Interest Rate" as used in this Note shall mean the rate of Prime plus Two percentage points (2.00%). The "Initial Applicable Interest Rate" shall be 10.75% and is based on the Prime Rate of Eight and Three-quarters percent (8.75%), as of the date that TMSCMI issued its Commitment Letter, plus Two percentage points (2.00%). "Prime Rate" is defined as the Prime Rate as published in the Money Rate Section of the Wall Street Journal.

Effective the first calendar day of the calendar quarter following initial disbursement and quarterly thereafter, the Applicable Interest Rate Shall be adjusted to Two percent (2.00%) over Prime.

Upon any change in the interest rate, the above monthly principal and interest payment shall be adjusted to reamortize the remaining loan balance in equal monthly payments of principal and interest over the remaining term of the loan.

The whole of the principal sum of this Note together with all interest accrued and unpaid thereon and all other sums due under the Mortgage or Deed of Trust or the equivalent (hereinafter defined) and this Note (all such sums hereinafter collectively referred to as the "Indebtedness") shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid within fifteen (15) days of the date when due or on the happening of any other Event of Default, after the expiration of any applicable notice and grace periods, herein or under the terms of the Mortgage or Deed of Trust or the equivalent (hereinafter collectively an "Event of Default"). All of the terms, covenants and conditions contained in the Mortgage or Deed of Trust and the Other Security Documents (hereinafter defined) are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event that it should become necessary to employ legal counsel to collect the Indebtedness or to protect or foreclose the security hereof, Borrower also agrees to pay reasonable attorneys' fees and costs for the services of such legal counsel whether or not suit be brought.

If, following the occurrence of any Event of Default, Borrower shall tender payment of an amount sufficient to satisfy the Indebtedness at any time prior to a sale of the secured Real Property (as defined under the Mortgage or Deed of Trust or the equivalent) either through foreclosure or the exercise of other remedies available to Lender under the Mortgage or Deed of Trust or the equivalent, such tender by Borrower shall be deemed to be a voluntary prepayment under this Note in the amount tendered.

Provided no Event of Default exists and the SBA 504 Debenture has funded, the principal balance of this Note may be prepaid in whole or in part under this Note, upon Borrower's not less than twenty-one (21) days prior written notice to Lender specifying the date on which prepayment is to be made (the "Prepayment Date") and the amount which is to be prepaid and upon payment of  interest accrued and unpaid on the

2

principal balance of this Note, the Mortgage or Deed of Trust or the equivalent and the Other Security Documents. If the Borrower fails to give the required notice, Borrower will be charged interest at the Applicable Interest Rate for the twenty-one (21) day period. At Lender's option, if any notice of prepayment is given, the amount specified in such notice and the other sums required under this paragraph shall be due and payable on the Prepayment Date. A prepayment, for the purposes of this paragraph, is any payment made ahead of schedule that exceeds 20 percent (20%) of the then outstanding principal balance.

**Prepayment Penalty: If this credit accommodation is paid off prior to the funding of the 504 Debenture, you will be charged the amount of one year's interest on the total amount of funds disbursed as of the date of prepayment, for both the TMSCMI Construction/Permanent Loan and the Bridge Loan. Interest will be calculated at the Applicable Interest Rate in effect on the date you prepay the loan and in no event will the interest rate exceed the maximum rate allowable by state law.**

This Note is secured by the Mortgage or Deed of Trust or the equivalent and the Other Security Documents. if applicable. The term "Other Security Documents" as used in this Note shall mean all and any of the loan documents other than this Note or the Mortgage or Deed of Trust now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guarantee payment of this Note, including, but not limited to the Commercial Loan and Security Agreement and the Construction Financing Agreement. Whenever used, the singular number shall include the plural, the plural the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors, and administrators.

This Note is subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the Indebtedness or any portion thereof at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the Indebtedness or any portion thereof at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

If any sum payable under this Note is not paid in full within fifteen (15) days after the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to no more than five percent (5%) of the full amount that was due or $100, whichever is less. Such amounts shall be secured by the Mortgage or Deed of Trust

3

and the Other Security Documents.

The term "Collateral" as used in this Note shall mean any funds, guaranties, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be, hypothecated, directly, or indirectly by the undersigned or others, in connection with, or as security for, the Indebtedness or any part thereof. The Collateral, and each part thereof, shall secure the Indebtedness and each part thereof. The covenants and conditions set forth or referred to in any and all instruments of hypothecation constituting the Collateral are hereby incorporated in this Note as covenants and conditions of the undersigned with the same force and effect as though such covenants and conditions were fully set forth herein.

The Indebtedness shall immediately become due and payable, without notice or demand, upon the appointment of a receiver or liquidator, whether voluntary or involuntary, for the undersigned or for any of its property, or upon the filing of a petition by or against the undersigned under the provisions of any State insolvency law or under the provisions of the Bankruptcy Reform Act of 1978, as amended, or upon the making by the undersigned of an assignment for the benefit of its creditors. Holder is authorized to declare all or any part of the Indebtedness immediately due and payable upon the happening of any of the following additional events of default: (1) failure to pay any part of the Indebtedness when due by acceleration or otherwise; (2) nonperformance by the undersigned for any agreement with, or any condition imposed by Holder, with respect to the Indebtedness; (3) Holder's discovery of the undersigned's failure in any application of the undersigned to Holder to disclose any fact deemed by Holder to be material or of the making therein or in any of the said agreements, or in any affidavit or other documents submitted in connection with said application or the Indebtedness, or any misrepresentation, by, on behalf of, or for the benefit of the undersigned; (4) the reorganization (other than a reorganization pursuant to any of the provisions of the Bankruptcy Report Act of 1978, as amended) or merger or consolidation of the undersigned (or the making of any agreement therefor) without the prior written consent of Holder; (5) the undersigned's failure duly to account, to Holder's satisfaction, at such time or times as Holder may require, for any of the Collateral, or proceeds thereof, coming into the control of the undersigned; or (6) the institution of any suit affecting the undersigned deemed by Holder to affect adversely its interest hereunder in the Collateral otherwise. Holder's failure to exercise any of its rights under this paragraph shall not constitute a waiver thereof.

Upon an Event of Default, Holder is empowered to sell, assign, and deliver the whole or any part of the Collateral at public or private sale, without demand, advertisement or notice of the time or place of sale of any adjournment thereof, which are hereby expressly waived. After deducting all expenses incidental to or arising from such sale or sales, Holder may apply the residue of the proceeds hereof to the payment of the Indebtedness, as it shall deem proper, returning the excess, if any, to the undersigned. The undersigned hereby waives all right of redemption or appraisement

whether before or after sale.

Holder is further empowered to collect or cause to be collected or otherwise to be converted into money all or any part of the Collateral, by suit or otherwise, and to surrender, compromise, release, renew, extend, exchange, or substitute any item of the Collateral in transactions with the undersigned or any third party, irrespective of any assignment thereof by the undersigned, and without prior notice to or consent of the undersigned or any assignee. Whenever any item of the Collateral shall not be paid when due, or otherwise shall be in default, whether or not the Indebtedness, or any part thereof, has become due, Holder shall have the same rights and powers with respect to such item of the Collateral as are granted in this paragraph in case of nonpayment of the Indebtedness, or any part thereof, when due. None of the rights, remedies, privileges, or powers of Holder expressly provided for herein shall be exclusive, but each of them shall be cumulative with and in addition to every other right, remedy, privilege, and power now or hereafter existing in favor of Holder, whether at law or equity, by statue or otherwise.

The undersigned agrees to take all necessary steps to administer, supervise, preserve, and protect the Collateral; and regardless of any action taken by Holder, there shall be no duty upon Holder in this respect. The undersigned shall pay all expenses of any nature, whether incurred in or out of court, and whether incurred before or after this Note shall become due at its maturity date or otherwise including but not limited to reasonable attorneys' fees and costs, which Holder may deem necessary or proper in connection with the satisfaction of the Indebtedness or the administration, supervision, preservation, protection of (including, but not limited to, the maintenance of adequate insurance), or the realization upon the Collateral. Holder is authorized to pay at any time and from time to time any or all of such expenses, add the amount of such payment to the amount of the Indebtedness, and charge interest thereon at the rate specified herein with respect to the principal amount of this Note.

The security rights of Holder and its assigns hereunder shall not be impaired by Holder's sale, hypothecation or rehypothecation of any note of the Undersigned or any item of the Collateral, or by any indulgence, including but not limited to (a) any renewal, extension, or modification which Holder may grant with respect to the Indebtedness or any part thereof, or (b) by surrender, compromise, release, renewal, extension, exchange, or substitution which Holder may grant in respect of the Collateral, or (c) any indulgence granted in respect of any endorser, guarantor, or surety, the purchaser, assignee, transferee, or pledgee of this Note or the Collateral.

This Note may not be modified, amended, waived, extended, changed, discharged, or terminated orally or by an act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge, or termination is sought.

5

If Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several.

Borrower and all others who may become liable for the payment of all or any part of the Indebtedness do hereby joint and severally waive presentment and demand for payment, notice of dishonor, notice of protest, and notice of non-payment. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Mortgage or Deed of Trust or the equivalent, or the Other Security Documents made by agreement between Lender and any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate, or affect the liability of Borrower, and any other who may become liable for the payment of all or any part of the Indebtedness, under this Note, the Mortgage or Deed of Trust or the equivalent, or the Other Security Documents.

Borrower (and the undersigned representative of Borrower, if any) represents the Borrower has full power, authority and legal right to execute, deliver and perform its obligations pursuant to this Note, the Mortgage or Deed of Trust or the equivalent, and the Other Security Documents and that this Note, the Mortgage or Deed of Trust or the equivalent and the Other Security Documents constitute valid and binding obligations of Borrower.

This Note is supported by real property and the Deed(s) of Trust/Mortgage(s) securing same contain the following:

**DUE ON SALE - CONSENT BY LENDER:**   Lender may, at its option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Tennessee law.

6

This Note and all other Loan Documents shall be deemed contracts made under the laws of the State of California and for all purposes shall be construed in accordance with the laws of California, except where preempted by Federal Law or the laws of the jurisdiction where the Property is located.

IN WITNESS WHEREOF, Borrower has duly executed this Note the date and year first above written.

SUN ENTERPRISES, INC.

BY:_____

AMIT K. RAY, PRESIDENT

ATTESTED BY:_____

TAPATI RAY, SECRETARY

7

570-103-0000 1010-0

# COMMERCIAL LOAN AND SECURITY AGREEMENT

This COMMERCIAL LOAN AND SECURITY AGREEMENT (the "Agreement") is entered into this 28th day of _December_ , 19 95 , by and between SUN ENTERPRISES, INC. (collectively referred to as "Borrower") having (its/their) business address at 1970 East Shelby Drive, Memphis, Tennessee and The Money Store Commercial Mortgage Inc, a New Jersey corporation, (hereinafter referred to as "Lender") having a place of business at 3301 "C" Street, Suite 100M, Sacramento, California. 95816-3342.

In consideration of the mutual covenants and agreements contained herein, Borrower and Lender agree as follows:

1.     **Use of Proceeds:** Borrower intends to purchase certain real property (the "Property") commonly known as 1970 East Shelby Drive, Memphis, Tennessee and machinery and equipment (or fixtures) described as See Exhibit "A" attached hereto and incorporated by reference and to pay other related costs and expenses with the proceeds of the loans described in this Agreement. Borrower agrees to repay to Lender the loans (hereinafter from time to time referred to jointly as the "loan(s)" described in this Agreement in accordance with the terms set forth herein. The proceeds of the loans will be used solely for business purposes. This ( ) is ( x ) is not a construction loan. If this is a construction loan, then all the terms and conditions of the Construction Financing Agreement executed by Borrower are incorporated herein by reference as though fully set forth.

2.     **Agreement Covers Two Loans:** Subject to the terms and conditions set forth in that certain loan commitment letter and any and all amendments thereto (the "Commitment Letter") between Lender and Borrower dated October 20, 1995, Lender has agreed to make Borrower two loans identified herein separately as the "TMS Loan" and the" Bridge Loan". The terms and conditions of the Commitment Letter are incorporated herein by reference as though fully set forth.

3.     **TMS and Bridge Loans Identified:** Borrower requested TMSCMI to make a loan (the "TMS Loan") in the principal sum of $781,000.00 repayable over Thirty (30) years at an initial rate of 10.75%. Following initial disbursement and quarterly thereafter, the rate shall be adjusted 2.00% over the Prime Rate as published in the Money Rate Section of the Wall Street Journal.

    Borrower also requested TMSCMI to make an additional loan (the "Bridge Loan") in the principal sum of $624,000.00 at an initial rate of 10.75% repayable over a term of Four (4) months to be repaid from the proceeds of a junior and subordinate loan to be made to Borrower by Alacon Financial ("CDC") upon funding of the 504 Debenture Guaranty, issued and guaranteed by the U. S. Small Business Administration in the net amount of $624,000.00. Following initial disbursement and quarterly thereafter, the interest rate shall be adjusted to 2.00% over the Prime Rate as published in the Money Rate Section of the Wall Street Journal and as further provided in the Promissory Note, the terms and conditions of which are

1

fully incorporated herein by reference as though fully set forth.

Further, Borrower has executed that certain SBA ("SBA Authorization") dated December 13, 1995, Number CDC-L-886577 30 02-NASH. The terms and conditions of the SBA Authorization are incorporated herein by reference as though fully set forth as terms and conditions of the Bridge Loan.

4.    **Additional Documentation/Power of Attorney:** Borrower shall execute such other agreements in connection with the Loans as Lender requires as conditions of the Loans and Lender shall have received such other approvals, opinions, agreements, or documents as Lender may reasonably request. Borrower irrevocably appoints Lender as its true and lawful attorney-in-fact to endorse the name of Borrower on all documents necessary to carry out the terms, conditions and intent of this Agreement.

5.    **Loan Documents Incorporated:** It is mutually understood and agreed by and between the parties hereto on behalf of themselves and their heirs, respective personal representatives or successors in interest, that the TMS and Bridge Notes and TMS and Bridge Mortgages or Deeds of Trust and all other agreements ("Loan Documents") are subject to all of the conditions, stipulations, agreements, and covenants contained in this Agreement to the same extent and effect as they would be if fully set forth in and made a part of the Notes and Mortgages or Deeds of Trust until this Agreement is terminated by the completion of its terms and conditions; and it is further expressly understood and agreed that this Agreement is made subject to all the conditions, stipulations, agreements, and covenants contained in the TMS and Bridge Notes and TMS and Bridge Mortgages or Deeds of Trust to the same extent and effect as they would be if fully set forth herein and made a part hereof.

6.    **Evidence of TMS Loan:** The TMS Loan shall be evidenced by a promissory note and any amendments thereto (the "TMS Note"), executed by the Borrower and payable to Lender. Repayment of the TMS Loan and performance of all other obligations of Borrower to Lender in connection with the TMS Loan shall be governed by the TMS Note, the Construction Financing Agreement, if applicable, and this Agreement and shall be secured by a first lien on the Property evidenced by deed of trust (the "TMS Deed of Trust") or mortgage (the "TMS Mortgage") whichever is applicable in the jurisdiction where the Project is located and any other collateral documentation that may be required by Lender. Lender's lien position shall be evidenced by an ALTA Title Policy of title insurance, or its equivalent acceptable to Lender.

7.    **Evidence of Bridge Loan:** The Bridge Loan shall be evidenced by a promissory note and any amendments thereto (the "Bridge Note") executed by the Borrower and payable to Lender. Repayment of the Bridge Loan and performance of all other obligations of Borrower to Lender in connection with the Bridge Loan shall be governed by the Bridge Note the Construction Financing Agreement, if applicable, and this Agreement and shall be secured by a second lien on Property evidenced by a deed of trust (the "Bridge Deed of Trust") or a mortgage (the "Bridge Mortgage") whichever is applicable in the jurisdiction where the Project is located and by such other collateral as Lender may require. Lender's lien position shall be evidenced by an **ALTA** Policy of Title Insurance, or its equivalent, acceptable to Lender.

8.    **Collateral Security**:  In addition to the TMS Note and Deed of Trust or Mortgage, the Bridge Note and Deed of Trust or Mortgage and the performance of all other monetary and nonmonetary obligations of Borrower in connection therewith, Borrower agrees to provide the below listed additional collateral (the "Additional Collateral") as security to Lender Machinery, Equipment and Furniture (See Exhibit "A" attached hereto and incorporated by reference) and personal guaranty of Amit K. Ray and Tapati Ray.

(A) Borrower warrants, represents, covenants, and agrees that:

(I)    The Borrower is the absolute and sole owner of the additional collateral described in this paragraph and that said collateral is free from all liens, encumbrances, and security interests except those described in this Agreement.

(ii)    The Borrower shall remain in possession of said collateral until a default occurs and shall care for, maintain and insure the collateral. Borrower shall further permit the Lender to inspect said collateral at any time during normal business hours. That except for said collateral classified as inventory, the Borrower shall not sell, dispose of, encumber or permit to become encumbered, or move out of the state where the Project is located, any of said collateral without the express written consent of the Lender.

(iii)    The Borrower shall be in default hereunder if the Borrower fails to perform or discharge any obligation or pay any debts secured hereby or fails to perform any covenant or agreement herein or in any other agreement between the Borrower and Lender. Upon default, LENDER MAY, WITH OR WITHOUT NOTICE, ACCELERATE THE ENTIRE INDEBTEDNESS SECURED HEREBY.  No waiver by the Lender of any default shall be a waiver of any other default or of the same default on a future occasion. Borrower agrees to assemble said collateral and make it available to the Lender at such time and place as designated by the Lender in the event of default and, further, waives notice of default. Borrower agrees that Lender may, in the event of default, dispose of said collateral in any order and in any manner which is commercially reasonable. The net proceeds of any sale of the collateral shall be applied in any order Lender, in its sole discretion determines, to the total indebtedness owed by Borrower(s) to Lender.

(iv)    BORROWER(S) HAVE BEEN ADVISED AND UNDERSTAND THAT DISPOSAL OF THE COLLATERAL BY BORROWER(S) COVERED BY THIS PARAGRAPH MAY CONSTITUTE A VIOLATION OF STATE AND/OR FEDERAL CRIMINAL LAW. BORROWER FURTHER ACKNOWLEDGES THAT IT HAS READ THIS PARAGRAPH BEFORE SIGNING IT AND HAS RECEIVED A COPY THEREOF.

initials

(v)    This security interest excludes any hazardous or toxic materials, substances or waste that has been generated, treated, stored, deposited, or disposed of in or pertaining to any personal property subject to this security interest in, on, or below the Property on which any such personal property is located.

9.    **Prepayments and Late Charges:**  Prepayment of the outstanding loan balance, or portions thereof, may be made prior to the maturity date hereof; except that if prepayment is made prior to the funding of the SBA 504 Debenture, a prepayment penalty shall be assessed, as further set forth below.  A prepayment, for the purpose of this paragraph, is defined as any payment made ahead of schedule which exceeds twenty percent (20%) of the then outstanding principal balance.  The actual amount necessary to prepay total

3

indebtedness during the term of the loan will be an amount equal to the outstanding principal balance of the Notes plus interest accrued and unpaid thereon to the prepayment date, plus all other sums due and owing Lender as provided for herein and in the other Loan Documents.   Borrower shall give Lender written notice of Borrower's intent to prepay at least twenty-one (21) days prior to prepayment.

**Prepayment Penalty:  If this credit accommodation is paid off prior to the funding of the 504 Debenture, you will be charged the amount of one year's interest on the total amount of funds disbursed as of the date of prepayment, for both the TMSCMI Construction/Permanent Loan and the Bridge Loan.  Interest will be calculated at the Applicable Interest Rate in effect on the date you prepay the loan and in no event will the interest rate exceed the maximum rate allowable by state law.**

Late charges shall be assessed as provided for under the TMS Note and the Bridge Note.

10.    **Interest Rate:**  Borrower agrees to pay interest to Lender as set forth in the TMS Note and the Bridge Note.

11.    **Interest Shall Not Exceed Permissible Rate:**  All agreements between the Borrower and the Lender are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of maturity of the indebtedness or otherwise, shall cause the amount paid or agreed to be paid to the Lender for the use, forbearance of detention of the indebtedness evidenced hereby to exceed the maximum permissible interest rate under applicable law.  If, for any circumstances whatsoever, fulfillment of any provision hereof, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then effectively the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstance the Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal balance evidenced hereby and not to the payment of interest.  As used herein, the term "applicable law" shall mean the law in effect as of the date hereof, provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Agreement shall be governed by such new law as of its effective date. This provision shall control every other provision of all agreements between the Borrower and the Lender.

12.    **Loan Fees, Loan Processing Fees, and Deposit for Out-of-Pocket Expenses:**  Borrower agrees to pay to Lender those loan fees, loan processing fees and deposit for out-of-pocket expenses as provided for in the Commitment Letter.

13.    **Borrower's Representations and Warranties:**  Borrower makes the following representations and warranties:
       (A)    Authority. Borrower has complied with all laws concerning its organization, existence and transaction of business and has authority to execute the Loan Documents and to perform the undertakings of Borrower contained in the Loan Documents. Borrower has the right and power to own and develop the Property as contemplated in the Loan Documents and has properly obtained, or shall obtain at the appropriate time, all permits, licenses and approvals necessary to construct, occupy and operate the Project.

(B)     Statements: All statements made by Borrower to Lender and other writings delivered to Lender by Borrower are accurate and contain no misrepresentations or untruths.

©       No Legal Actions: There are no legal actions, suits, or proceedings pending or, to the knowledge of Borrower, threatened against Borrower or Guarantor before any court or administrative agency.

(D)     No Legal Authorization Needed: No authorization, consent or approval or any formal exemption of any Governmental body, regulatory authorities (Federal state or local) or mortgagee, creditor, or third party is or was necessary to the valid execution and delivery by Borrower of this Agreement or any other documents required in connection with the loans.

(E)     Not in Default: Neither Borrower nor Guarantor is in default of any obligation, covenant, or condition contained in any bond, debenture, note, or other evidence of indebtedness or any mortgage or collateral instrument securing the same.

(F)     Environmental and Health and Safety Issues: Borrower states that it has duly complied with, and its business operations, assets, equipment, property, leaseholds, or other facilities are in compliance with the provisions of all federal, state and local environmental, health and safety laws, codes, ordinances, rules, and regulations.

(G)     Taxes Are Paid: Borrower and Guarantor have filed all tax returns which are required and have paid, or made provision for the payment of, all taxes which have or may become due pursuant to said returns or pursuant to any assessments received by Borrower or Guarantor. No tax liability has been asserted by the Internal Revenue Service or other taxing agency, federal, state, or local for taxes materially in excess of those already identified by Borrower, if any, and Borrower knows of no basis for any such deficiency assessment.

(H)     No Adverse Changes:  Borrower certifies that there has been no adverse change since the date of the Loan Application in the financial condition, organization, operation, business prospects fixed properties, or personnel of Borrower or Guarantor.

(I)     Maintenance, Books and Records:  So long as either of the Notes shall remain unpaid, the Borrower will keep adequate records and books of account, in which complete entries will be made in accordance with generally accepted accounting principles consistently applied reflecting all financial transactions of the Borrower.

14.   **Borrower Compliance:**  That upon request of Lender or closing agent for Lender, Borrower will execute any document or instrument that should have been signed at or before the closing of the Loan, or which was incorrectly drafted and/or incorrectly signed, and agrees to fully cooperate in the adjustment or correction of clerical errors and in the execution or correction of any and all loan closing documentation deemed necessary or desirable in the reasonable discretion of the Lender.

15.   **Events of Default:** Borrower agrees to waive notification of default and agrees that Borrower shall be in default if any of the following events occur:

(A)     Borrower fails to comply with any other covenant, condition or other provision contained in this Agreement or the other Loan Documents.

(B)     Any representation or warranty made by Borrower herein or in any other document in connection with this Loan is or becomes false or misleading.

©       A petition in bankruptcy is filed by or against Borrower or a receiver, custodian, liquidator, sequestrator, trustee, or other similar official of any property of Borrower is appointed, or Borrower makes an assignment for the benefit of creditors, or Borrower dies or becomes insolvent, or Borrower fails to pay its debts generally as they become due, or an

attachment of execution is levied against any substantial portion of the Property, the Project, or any other Property of Borrower, or any of the above occurs in connection with a guarantor of the Note, the Loans or the Project.

(D)    The liens of Lender's Deeds of Trust or Mortgages shall lose validity or priority.

(E)    Subject to the terms of this Agreement, the Property is materially damaged by fire, or other casualty.

(F)    SBA withdraws or cancels the effectiveness of the SBA Authorization with respect to Borrower.

(G)    SBA fails to issue for any reason, including without limitation, upon the request of Borrower, the 504 Debenture and Guaranty with respect to Borrower in accordance with the SBA Authorization.

(H)    CDC fails to make for any reason, including without limitation, upon the request of Borrower, a junior and subordinate secured 504 loan to Borrower.

It is agreed between the parties that a default in either this Agreement, the Mortgages or Deeds of Trust, the Notes, or in any Loan Document shall constitute a default in all Loan Documents.

16.    **Remedies:** Upon any event of default under this Agreement or any other Loan Document, Lender in addition to any other right or remedy which it has available under this Agreement or any other Loan Document or which is otherwise available at law or in equity, which rights and remedies shall be cumulative, may at its option, without prior notice or demand, declare all sums advanced or disbursed by Lender to be immediately due and payable.

17.    **Insurance:** Borrower agrees to maintain during the term of the Loans adequate hazard insurance policies covering fire and extended coverage and such other insurance as Lender may reasonably require in the amount of the replacement cost of all real and personal property collateral given to Lender with respect to the loan with acceptable Lenders' loss payable clauses in favor of Lender. Borrower further agrees if, at any time during the life of the loans, Borrower's property is declared to be within a flood hazard area, to purchase Federal Flood Insurance, if available. Such insurance shall be in an amount equal to (l.) the replacement cost of the property or (2.) the maximum limit of coverage available. If Borrower fails to maintain any of the insurance required by this Agreement, Borrower agrees that Lender may purchase such insurance and charge the Borrower for such costs.

18.    **Compliance With Laws:** So long as either the TMS Note or the Bridge Note shall remain unpaid, the Borrower has complied and will comply in all respects with all applicable laws, rules, regulations, and orders; such compliance to include, without limitation, paying before the same becomes delinquent all taxes, assessments, and governmental charges imposed upon it.

19.    **Financial Statements:** Borrower will furnish to Lender for the twelve (12) month period ending **December 31, 1996** and annually thereafter (no later than 3 months following the expiration of any such period) and at such other times as Lender may require, Borrower's financial and operating statements, compiled by Certified Public Accountant.

20.    **Right of Inspection:** So long as either the TMS Note or the Bridge Note shall remain unpaid, the Borrower will, at any reasonable time and from time to time, permit Lender or any agent or representative thereof to examine and make copies of and abstracts from the records and books of account, to visit the properties of the Borrower, and to discuss the affairs, finances, and accounts of the Borrower with any of its respective officers and directors and the Borrower's independent accountants.

21.    **Unenforceable Covenants:** Borrower agrees that in the event that any provision of this Agreement or any other of the Loan Documents shall be declared null and void, invalid, or held for any reason to be unenforceable by a Court of competent jurisdiction, the remainder of such agreement(s) shall nevertheless remain in full force and effect, and to this end, the provisions of all covenants, conditions, and agreements described herein are deemed separate.

22.    **Indemnification:** Borrower agrees to indemnify and save Lender harmless against any and all liabilities, claims, damages, costs, and expenses arising out of or resulting from the purchase of the Property and other uses of the loan proceeds or the administration of the Loans.

23.    **Environment:** So long as either the TMS Note or Bridge Note shall remain unpaid, the Borrower will be and will remain in compliance with the provisions of all federal, state, and local environmental, health, and safety laws, codes and ordinances, and all rules and regulations issued thereunder; notify Lender immediately of any notice of a hazardous discharge or environmental complaint received from any governmental agency or any other party; notify Lender immediately of any hazardous discharge from or affecting its premises; immediately contain and remove the same, in compliance with all applicable laws; promptly pay any fine or penalty assessed in connection therewith; permit Lender to inspect the premises, to conduct tests thereon, and to inspect all books, correspondence, and records pertaining thereto; and at Lender's request, and at the Borrower's expense, provide a report of a qualified environmental engineer, satisfactory in scope, form and content to Lender, and such other and further assurances reasonably satisfactory to Lender that the condition has been corrected. Borrower agrees to comply with Lender's environmental policies and procedures and to execute the Environmental Indemnity Agreement.

24.    **Additional Terms:** During the terms of the Loans, the Borrower shall not (a) incorporate if presently a partnership or sole proprietorship or (b) sell or encumber a substantial part or all of its assets without Lender's written permission. Further, Borrower agrees not to further encumber any of its assets in which Lender has a security interest without Lender's prior written permission.

25.    **Lender's Non-Waiver of Rights:** A waiver by Lender of any option or right herein given or reserved on any one occasion shall not be deemed a waiver of said option or right on any future occasion. Lender, in its discretion, may extend the time of payment of the principal evidenced and secured by the Notes and other loan documents and any extension so granted shall be deemed to be made in pursuance of this Agreement and not in modification thereof.

26.    **No Right to Notice:** No notice to or demand on the Borrower in any case shall entitle

the Borrower to any other or further notice or demand in similar or other circumstances.

27.     **Survival of Representations and Warranties:** All agreements, representations, and warranties made by the Borrower herein or any other document or certificate delivered to the Lender in connection with the transactions contemplated by this Agreement shall survive the delivery of this Agreement, the Notes and the Loan Documents hereunder and shall continue in full force and effect so long as either of the Notes is outstanding.

28.     **Successors and Assigns:** This Agreement shall be binding upon the Borrower, his Heirs, Successors, and Assigns, except that the Borrower may not assign or transfer its rights without prior written consent of Lender. This Agreement shall inure to the benefit of the Lender, its Successors, Assigns and all subsequent Holders of the Notes. Lender may freely transfer and assign its interests or any portion thereof without notification to Borrower or Guarantor.

29.     **Governing Law:** This Agreement, and all other Loan Documents shall be deemed contracts made under the laws of the State of California and for all purposes shall be construed in accordance with the laws of California except where preempted by Federal law or the laws of the jurisdiction where the Property is located.

30.     **Amendments, Etc.:** No amendment, modification or termination of any provision of any of the Loan Documents to which the Borrower is a party, nor consent to any departure by the Borrower from any of the Loan Documents to which it is a party, shall in any event be effective unless the same shall be in writing and signed by the Lender, and then such consent shall be effective only in the specific instance and for the specific purpose given.

31.     **Notices, Etc.:** All notices and other communications provided for under this Agreement and under the other Loan Documents to which the Borrower is a party shall be in writing (including telegraphic, telex, and facsimile transmissions) and mailed or transmitted or delivered, if to the Borrower, at its address at 6127 Shady Grove Lane, Memphis, Tennessee , Attention: Amit K. Ray and Tapati Ray, and if to Lender at its address at P.O. Box 162247, Sacramento, California 95816-2247, Attention: Servicing Department; or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. Except as otherwise provided in this Agreement, all such notices and communications shall be effective when deposited in the mails or delivered to the telegraph company or sent.

32.     **Integration:** This Agreement, the Construction Financing Agreement, if applicable, and the Loan Documents contain the entire agreement between the parties relating to the subject matter hereof and supersede all oral statements and prior writings with respect thereto.

33.     **Joint and Several Liability:** If Borrower consists of more than one person or entity, each will be jointly and severally liable to Lender for the performance of this Agreement and the Loan Documents.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written. Borrower and

Guarantor have read and understand this Agreement and now state and agree that no representation, promise or agreement not expressed herein or in the other Loan Documents has been made to induce the Borrower to enter into this Agreement.

THE MONEY STORE COMMERCIAL MORTGAGE INC.

By: _____
    Kristi L. Berry
Title: _____ Vice President _____

SUN ENTERPRISES, INC.

BY: _____
AMIT K. RAY, PRESIDENT

BY: _____
TAPATI RAY, SECRETARY

GUARANTORS:

_____
AMIT K. RAY, INDIVIDUALLY

_____
TAPATI RAY, INDIVIDUALLY

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

FN 6678

*10*

**RECORDATION REQUESTED BY:**

The Money Store Commercial Mortgage Inc.
PO Box 162247
SACRAMENTO, CA 95816-2247

**WHEN RECORDED MAIL TO:**

The Money Store Commercial Mortgage Inc.
PO Box 15143
SACRAMENTO, CA 95851

**OWNER:**

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

This Deed of Trust prepared by: X Ruth Ann Lewis
THE MONEY STORE COMMERCIAL MORTGAGE INC.

# DEED OF TRUST

**MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $781,000.00**

**THIS DEED OF TRUST IS DATED** Dec 26, 1995 **, among** SUN ENTERPRISES, INC. **, whose address is** 1970 East Shelby Drive, Memphis, Tennessee **(referred to below as "Grantor");** THE MONEY STORE COMMERCIAL MORTGAGE INC., **whose address is P.O. BOX 162247, SACRAMENTO, CA 95816 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and** Mid-South Title, **a corporation (referred to below as "Trustee").**

**CONVEYANCE AND GRANT.** For and in consideration of Five Dollars ($5.00) cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor has bargained and sold, and does hereby bargain, sell, convey and confirm unto the Trustee in trust, with Power of Sale, for the benefit of Lender as Beneficiary, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **located in** Shelby County, State of Tennessee (the "Real Property"):

**See Exhibit "A" attached hereto and incorporated by reference.**

**The Real Property or its address is commonly known as** 1970 East Shelby Drive, Memphis, Tennessee.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants Lender a Uniform Commercial Code security interest in the Rents and the Personal Property defined below.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust. Terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

    **Beneficiary.** The word "Beneficiary" means THE MONEY STORE COMMERCIAL MORTGAGE INC., its successors and assigns. THE MONEY STORE COMMERCIAL MORTGAGE INC. also is referred to as "Lender" in this Deed of Trust.
    **Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

SUB-EXHIBIT

A-3

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

FN 6678

# DEED OF TRUST

Loan No.                                          (Continued)                                          Page 2

**Grantor.** The word "Grantor" means any and all persons and entities executing this Deed of Trust, including without limitation Sun Enterprises, Inc.

**Guarantor.** The word "Guarantor" means and includes without limitation any and all guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Trustee or Lender to enforce obligations of Grantor under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means THE MONEY STORE COMMERCIAL MORTGAGE INC., its successors and assigns.

**Note.** The word "Note" means the Note dated _Dec. 26_, 19 95_, in the principal amount of $781,000.00 from Grantor to Lender, together with all renewals, extensions, modifications, refinancings, and substitutions for the Note. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the property, interests and rights described above in the "Conveyance and Grant" section.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Mid-South Title, a corporation and any substitute or successor trustees.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (a) remain in possession and control of the Property, (b) use, operate or manage the Property, and © collect any Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Deed of Trust, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Tennessee Hazardous Substances Act, T.C.A., 68-27-101, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (a) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and © Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

**FN 6678**

## DEED OF TRUST

Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Tennessee law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Deed of Trust.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right To Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

# FN 6678

## DEED OF TRUST

Loan No.                                    (Continued)                                    Page 4

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance to the extent such insurance is required by Lender and is or becomes available, for the term of the loan and for the full unpaid principal balance of the loan, or the maximum limit of coverage that is available, whichever is less.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Deed of Trust at any trustee's sale or other sale held under the provisions of this Deed of Trust, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Deed of Trust, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust.

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

FN 6678

# DEED OF TRUST

to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.
**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (a) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (b) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (c) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (d) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust.

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Grantor.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor under the Note, this Deed of Trust, and the Related Documents, and (b) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If the Grantor shall well and truly pay and perform the obligations at the time and times, and in the manner mentioned in this Deed of Trust, and shall well and truly abide by and comply with each and every term, covenant and condition set forth in this Deed of Trust, then this conveyance shall be and become null and void and the Trustee shall convey the Property to the Grantor by release

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

**FN 6678**

# DEED OF TRUST

Loan No.            (Continued)                          Page 6

deed at the expense of the Grantor.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

**Default on Indebtedness.** Failure of Grantor to make any payment when due on the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents. If such a failure is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Grantor, after Lender sends written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor under this Deed of Trust, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** The death of Grantor or the dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Grantor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure the Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, the same being expressly waived, to declare the entire Indebtedness immediately due and payable, including (if permitted by applicable law) any prepayment penalty for which Grantor may be obligated.

**Foreclosure.** With respect to all or any part of the Real Property, (a) the Trustee, at the Lender's request, shall have the right to enter and take possession of the Real Property and to sell all or part of the Real Property, at public auction, to the highest bidder for cash, free from equity of redemption, and any statutory or common law right of redemption, homestead, dower, marital share, and all other exemptions, after giving notice of the time, place and terms of such sale and of the Real Property to be sold as required by law, or (b) the Trustee or the Lender shall have the right to foreclose by judicial proceeding, in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to make application to a court of competent jurisdiction to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property prior to foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of Lender.

Case 2:05-cv-02257-SHM-tmp    Document 35-2    Filed 07/07/06    Page 28 of 55    PageID 78
Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

FN 6678

# DEED OF TRUST

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Grantor hereby waives any and all right of redemption, any statutory or common law right of redemption, homestead, dower, marital share and all other exemptions and other rights which might defeat, reduce or affect the right of the Lender to sell the Real Property or the Personal Property for the collection of the Indebtedness. Lender shall give notice to Grantor prior to acceleration following Grantor's breach of any covenant or agreement in this Deed of Trust. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than thirty (30) days from the date the notice is given to Grantor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph, including but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Grantor. Trustee, without demand on Grantor, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Real Property without any covenant or warranty, express or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this paragraph, Grantor, or any person holding possession of the Real Property through Grantor, shall immediately surrender possession of the Real Property to the purchaser at the sale. If possession is not surrendered, Grantor or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Real Property after sale.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy provided in this Deed of Trust, the Note, in any Related Document, or provided by law shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust after failure of Grantor to perform shall not affect Lender's right to declare a default and to exercise any of its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Indemnification of Trustee.** Grantor agrees to indemnify Trustee for all reasonable costs, charges, and attorneys' fees incurred by Trustee if Trustee is made a party to or intervenes in any action or proceeding affecting the Property, the title to the Property, or the interest of the Trustee or the Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Shelby County, Tennessee. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender,

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

FN 6678

# DEED OF TRUST

Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES TO GRANTOR AND OTHER PARTIES.** Any notice under this Deed of Trust shall be in writing, may be sent by telefacsimile, and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective when deposited in the United States mail first class, registered mail, postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. For notice purposes, Grantor agrees to keep Lender and Trustee informed at all times of Grantor's current address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law. This Deed of Trust has been delivered to Lender and accepted by Lender in the State of Tennessee. Subject to the provisions on arbitration, this Deed of Trust shall be governed by and construed in accordance with the laws of the State of Tennessee.**

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Multiple Parties.** All obligations of Grantor and Borrower under this Deed of Trust shall be joint and several, and all references to Borrower shall mean each and every Borrower, and all references to Grantor shall mean each and every Grantor. This means that each of the Grantors signing below is responsible for all obligations in this Deed of Trust.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Deed of Trust in all other respects shall remain valid and enforceable.

**Successors and Assigns.** In the event of the death, refusal, or of inability for any cause, on the part of the Trustee named herein, or of any successor trustee, to act at any time when action under the foregoing powers and trust may be required, or for any other reason satisfactory to Lender, Lender is authorized, either in its own name or through an attorney or attorneys in fact appointed for that purpose, by written instrument duly registered, to name and appoint a successor or successors to execute this trust, such appointment to be evidenced by writing, duly acknowledged; and when such writing shall have been registered, the substituted trustee named therein shall thereupon be vested with all the right and title, and clothed with all the power of the Trustee named herein and such like power of substitution shall continue so long as any part of the debt secured hereby remains unpaid.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**Miscellaneous Waivers.** Grantor waives all right of homestead, equity of redemption, statutory right of redemption, and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.**

GRANTOR:     SON ENTERPRISES, INC.

By: _____
Amit K. Ray, President

By: _____
Tapati Ray, Secretary

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

FN 6678

### EXHIBIT "A" TO DEED OF TRUST

#### LEGAL DESCRIPTION

**PARCEL I:**

A certain tract or parcel of land lying in Memphis, Shelby County, Tennessee, on the northeast quadrant of the I-55 and Shelby Drive Interchange, and being a part of the same parcel of land conveyed to Pan-Hans Properties Ltd. by Greenbriere Developments, Inc. by deed duly recorded at Instrument No. H8 2546, Shelby County Register's Office and more particularly described as follows:

Beginning at a corner post in the north right-of-way line of Shelby Drive, said corner post at a break in alignment of the right-of-way fence, where the Shelby Drive entrance ramp to I-55 North begins; thence with said fence North 55 deg. 20 min. 10 sec. West 327.51 feet to a corner post and break in the fence alignment; thence North 47 deg. 35 min. 43 sec. West 357.55 feet to an iron pin in said fence line; thence with the south line of Gardenview Subdivision, Section E (recorded in Plat Book 24, Page 22) North 86 deg. 56 min. 03 sec. East 572.31 feet to an iron pin; thence South 03 deg. 03 min. 57 sec. East 456.81 feet to an iron pin in the aforementioned right-of-way fence paralleling Shelby Drive; thence with said fence South 88 deg. 18 min. 37 sec. West 62.56 feet to the point of beginning.

**PARCEL II:**

A certain tract or parcel of land lying in Memphis, Shelby County, Tennessee, on the northeast quadrant of the I-55 and Shelby Drive Interchange and being on a part of the same parcels of land conveyed to Pan-Hans Properties, Ltd. by Greenbriere Developments, Inc. by deed duly recorded at Instrument No. H8 2546, Shelby County Register's Office and more particularly described as follows:

Beginning at the southeast corner of a 3.56 acre tract, said corner marked by an iron pin in the north right-of-way of Shelby Drive and located 62.56 feet east along said right-of-way of a corner post at the beginning of the entrance ramp from Shelby Drive to I-55 North; thence North 03 deg. 03 min. 57 sec. West 40.0 feet to an iron pin; thence North 88 deg. 18 min. 37 sec. East 423.68 feet to an iron pin; thence South 03 deg. 03 min. 57 sec. East 40.0 feet to an iron pin; thence South 88 deg. 18 min. 37 sec. West 423.68 feet to the point of beginning.

Parcel II is a non-exclusive easement only.

Tom Leatherwood, Shelby County Register of Deeds: Instr # FN6678

FN 6678

**STATE OF TENNESSEE**
**COUNTY OF SHELBY**

    Before me, the undersigned, a Notary Public of the State and County aforesaid, personally appeared Amit K. Ray and Tapati Ray with whom I am personally acquainted, (or proved to me on the basis of satisfactory evidence) and who, upon oath, acknowledged themselves to be the President and Secretary of Sun Enterprises, Inc., the within named bargainor, a corporation, and that they as such President and Secretary executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by themselves as President and Secretary.

    Witness my hand and Official Seal at office this 28th day of December, 1995.

_____
Notary Public

My Commission Expires:

_____

Return To: Mid-South Title
attn: Benny Norris
MS-762549

FN6678

FN 6678
No.
D/C ____ DR# 7
Pgs. 10 Itm.
Val. 781000
Tax 895.85
REG'S FEE 1.00
____ FEE 40.00
____ FEE
936.85

95 DEC 29 PM 2: 57

SHELBY COUNTY
REGISTER OF DEEDS



# Hanover
# Walsh
# Jalenak
# &Blair PLLC
Attorneys at Law

Joseph Hanover (1888-1984)
David Hanover (1899-1983)
J. Alan Hanover
William M. Walsh
James B. Jalenak*
Allen S. Blair
Michael E. Goldstein
Edward J. McKenney, Jr.*
James R. Newsom III
John Kevin Walsh
James A. Johnson, Jr.**
Barbara B. Lapides
Jason S. Wexler*
Delisa Flowers Eddings
E. Nicole Trail**

Helyn L. Keith Of Counsel

*Also Admitted in New York

**Also Admitted in Arkansas

July 1, 2003

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Sun Enterprises, Inc.
℅ Dr. Amit K. Ray, President
102 Canterbury Place
Ridgeland, MS 39157-8731

Re:    Sun Enterprises, Inc.
       TMSCMI Loan No. 51-0084050

Dear Dr. Ray:

This office represents Wachovia Commercial Mortgage, Inc., formerly known as The Money Store Commercial Mortgage, Inc. The subject loan in the original amount of $781,000.00 as evidenced by the Note executed by you on December 29, 1995 is seriously delinquent in its monthly payments.

In view of this delinquency, the loan has been declared to be in default. Wachovia Commercial Mortgage, Inc. hereby exercises its option to accelerate the maturity of the loan and makes demand upon you for immediate payment of the principal balance of $740,575.67 together with accrued interest through June 30, 2003 of $49,467.33 for a total of $790,043.00. Said total accrues interest from and after June 30, 2003 at a rate of $128.57 per day.

In addition to this sum, Wachovia Commercial Mortgage, Inc. has incurred additional expenses which are added to the indebtedness pursuant to the terms of the Note. These additional expenses include payment of delinquent personal and real estate taxes paid to the City of Memphis and Shelby County for the Shelby Inn on September 12, 2001 in the amount of $143,119.68; expenses for environmental testing of the Shelby Inn in the amount of $8,072.03; expenses for appraisal of the Shelby Inn in the amount of $1,145.43; and expenses for legal representation in the amount of $31,370.02. The total of the above-stated amounts is $973,750.16. This statement is made without prejudice to the right of Wachovia



SUB-EXHIBIT
(COLLECTIVE)
A-4

Fifth Floor · Falls Building    22 North Front Street    Memphis, Tennessee 38103-2156
Telephone 901.526.0621    Telecopier 901.521.9759    www.hanoverwalsh.com

FILE COPY

HANOVER, WALSH, JALENAK & BLAIR, PLLC   Page 2                    July 1, 2003

Commercial Mortgage, Inc. to make demand for additional expenses owed to it pursuant to the terms of the Note having been incurred either prior to or after the date of this letter.

Please make payment by way of either a wire transfer or certified funds payable to Wachovia Commercial Mortgage, Inc. directed to my attention at this office.

Your failure to make payment of the above-stated sums within ten (10) business days of the date of this letter will result in Wachovia Commercial Mortgage, Inc. taking whatever action is deemed necessary and appropriate in order to protect its interest.  Wachovia Commercial Mortgage, Inc. shall also seek its legal fees and costs in addition to the loan balance to be recovered from you in accordance with the terms of the loan as provided by law.

Yours very truly,

James R. Newsom III

cc:     Mr. Michael Cummer
        Eugene G. Douglass, Jr., Esq.

Q:\JRN\WPF\Wachovia Ray 9538\Letter to Sun Enterprises 062803.wpd



# Hanover
# Walsh
# Jalenak
# & Blair PLLC
Attorneys at Law

Joseph Hanover (1885-1984)
David Hanover (1899-1983)
J. Alan Hanover
William M. Walsh
James B. Jalenak*
Allen S. Blair
Michael E. Goldstein
Edward J. McKenney, Jr.
James R. Newsom III
John Kevin Walsh
James A. Johnson, Jr.**
Barbara B. Lapides
Jason S. Wexler*
Delisa Flowers Eddings
E. Nicole Trail**

Helyn L. Keith Of Counsel

*Also Admitted In New York
**Also Admitted In Arkansas

July 1, 2003

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Dr. Amit K. Ray
102 Canterbury Place
Ridgeland, MS 39157-8731

Dear Dr. Ray:

This office represents Wachovia Commercial Mortgage, Inc., formerly known as The Money Store Commercial Mortgage, Inc. The subject loan in the original amount of $781,000.00 as evidenced by the Note executed by SUN ENTERPRISES, INC. on December 29, 1995 is seriously delinquent in its monthly payments. You executed a guaranty for this loan and are therefore liable for repayment of the loan balance together with all other sums due pursuant to the Note.

In view of this delinquency, the loan has been declared to be in default. Wachovia Commercial Mortgage, Inc. hereby exercises its option to accelerate the maturity of the loan and makes demand upon you for immediate payment of the principal balance of $740,575.67 together with accrued interest through June 30, 2003 of $49,467.33 for a total of $790,043.00. Said total accrues interest from and after June 30, 2003 at a rate of $128.57 per day.

In addition to this sum, Wachovia Commercial Mortgage, Inc. has incurred additional expenses which are added to the indebtedness pursuant to the terms of the Note. These additional expenses include payment of delinquent personal and real estate taxes paid to the City of Memphis and Shelby County for the Shelby Inn on September 12, 2001 in the amount of $143,119.68; expenses for environmental testing of the Shelby Inn in the amount of $8,072.03; expenses for appraisal of the Shelby Inn in the amount of $1,145.43; and expenses for legal representation in the amount of $31,370.02. The total of the above-stated amounts is $973,750.16. This statement is made without prejudice to the right of Wachovia Commercial Mortgage, Inc. to make demand for additional expenses owed to it pursuant to the terms of the Note having been incurred either prior to or after the date of this letter.



Via USPS

HANOVER, WALSH, JALENAK & BLAIR, PLLC    Page 2                              July 1, 2003

Please make payment by way of either a wire transfer or certified funds payable to Wachovia Commercial Mortgage, Inc. directed to my attention at this office.

Your failure to make payment of the above-stated sums within ten (10) business days of the date of this letter will result in Wachovia Commercial Mortgage, Inc. taking whatever action is deemed necessary and appropriate in order to protect its interest.  Wachovia Commercial Mortgage, Inc. shall also seek its legal fees and costs in addition to the loan balance to be recovered from you in accordance with the terms of the loan as provided by law.

Yours very truly,

James R. Newsom III

cc:    Mr. Michael Cummer
       Eugene G. Douglass, Jr., Esq.

Q:\JRN\WPF\Wachovia Ray 9538\Letter to Amit K. Ray 062803.wpd



**Hanover**

**Walsh**

**Jalenak**

**& Blair** PLLC

Attorneys at Law

Joseph Hanover (1895-1984)
David Hanover (1899-1953)
J. Alan Hanover
William M. Walsh
James B. Jalenak*
Allen S. Blair
Michael E. Goldstein
Edward J. McKenney, Jr.
James R. Newsom III
John Kevin Walsh
James A. Johnson, Jr.**
Barbara B. Lapides
Jason S. Wexler*
Delisa Flowers Eddings
E. Nicole Trail**

Helyn L. Keith Of Counsel

*Also Admitted in New York
**Also Admitted in Arkansas

July 1, 2003

<u>VIA CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Tapati Ray, M.D.
102 Canterbury Place
Ridgeland, MS 39157-8731

This office represents Wachovia Commercial Mortgage, Inc., formerly known as The Money Store Commercial Mortgage, Inc.  The subject loan in the original amount of $781,000.00 as evidenced by the Note executed by SUN ENTERPRISES, INC. on December 29, 1995 is seriously delinquent in its monthly payments.  You executed a guaranty for this loan and are therefore liable for repayment of the loan balance together with all other sums due pursuant to the Note.

In view of this delinquency, the loan has been declared to be in default.  Wachovia Commercial Mortgage, Inc. hereby exercises its option to accelerate the maturity of the loan and makes demand upon you for immediate payment of the principal balance of $740,575.67 together with accrued interest through June 30, 2003 of $49,467.33 for a total of $790,043.00.  Said total accrues interest from and after June 30, 2003 at a rate of $128.57 per day.

In addition to this sum, Wachovia Commercial Mortgage, Inc. has incurred additional expenses which are added to the indebtedness pursuant to the terms of the Note. These additional expenses include payment of delinquent personal and real estate taxes paid to the City of Memphis and Shelby County for the Shelby Inn on September 12, 2001 in the amount of $143,119.68; expenses for environmental testing of the Shelby Inn in the amount of $8,072.03; expenses for appraisal of the Shelby Inn in the amount of $1,145.43; and expenses for legal representation in the amount of $31,370.02.  The total of the above-stated amounts is $973,750.16.  This statement is made without prejudice to the right of Wachovia Commercial Mortgage, Inc. to make demand for additional expenses owed to it pursuant to the terms of the Note having been incurred either prior to or after the date of this letter.



HANOVER, WALSH, JALENAK & BLAIR, PLLC    Page 2                                July 1, 2003

Please make payment by way of either a wire transfer or certified funds payable to Wachovia Commercial Mortgage, Inc. directed to my attention at this office.

Your failure to make payment of the above-stated sums within ten (10) business days of the date of this letter will result in Wachovia Commercial Mortgage, Inc. taking whatever action is deemed necessary and appropriate in order to protect its interest.  Wachovia Commercial Mortgage, Inc. shall also seek its legal fees and costs in addition to the loan balance to be recovered from you in accordance with the terms of the loan as provided by law.

Yours very truly,

James R. Newsom III

cc:    Mr. Michael Cummer
       Eugene G. Douglass, Jr., Esq.

Q:\JRN\WPF\Wachovia Ray 9538\Letter to Tapati Ray 062803.wpd

SEP 19 2001 11:07

PRECISION DATA PRODUCTS, INC. (973) 857-2424 • FAX (973) 857-5229

**TMSIC dba First Union Small Business Capital**
RC # 7111500

055291

66-156
531

DATE September 12, 2001

PAY Three Thousand Two Hundred Eighty Five and 52/100*** DOLLARS $ 3,285.52*****

TO
THE
ORDER
OF

NAME: Bob Patterson, Trustee
ADDRESS: P.O. Box 2751
CITY, STATE, ZIP: Memphis, TN 38101-2751

First Union National Bank
Chapel Hill, NC 27514

FOR Delinquent Personal Taxes #510084050

⑈055291⑈ ⑆053l0l56⑆ 2079900063l05⑈

**TMSIC dba First Union Small Business Capital**
RC # 7111500

055291

This check is in payment of   Delinquent Personal Taxes (Property)

Name:   Sun Enterprises

Loan #:   510084050

| Co/Sub | G/L | R/C | Amount |
|--------|-----|-----|--------|
| 6540 | 0888701 | 300/310 | $3,285.52 |

SUB- EXHIBIT
(COLLECTIVE)
A-5

PRECISION DATA PRODUCTS, INC. (973) 857-2424 • FAX (973) 857-5229

TMSIC dba First Union Small Business Capital
RC # 7111500

055290

66-156/
531

DATE September 12, 2001

PAY Sixty Eight Thousand Ninety Five and 38/100********** DOLLARS $ 68,095.38*****

TO
THE
ORDER
OF

NAME: Bob Patterson, Trustee
ADDRESS: P.O. Box 2751
CITY, STATE, ZIP: Memphis, TN 38101-2751

First Union National Bank
Chapel Hill, NC 27514

FOR County Real Estate Taxes #510084050

⑈055290⑈ ⑆053105611⑆ 207990006310511⑈

---

TMSIC dba First Union Small Business Capital
RC # 7111500

055290

This check is in payment of    Pay Delinquent County Real Estate Taxes

Name:    Sun Enterprises

Loan #:    510084050

| Co/Sub | G/L | R/C | Amount |
|--------|-----|-----|--------|
| 6540 | 10888701 | 0300/310 | $68,095.38 |

PRECISION DATA PRODUCTS, INC. (973) 857-2424 • FAX (973) 857-5229

**TMSIC dba First Union Small Business Capital**
**RC # 7111500**

055292

66-156
531

DATE September 12, 2001

PAY Sixty Six Thousand Three Hundred Eight and 13/100*** DOLLARS $66,308.13*****

TO THE ORDER OF

NAME: City Of Memphis
ADDRESS: 125 N Main, Room 375
CITY, STATE, ZIP: Memphis, TN 38103-2080

First Union National Bank
Chapel Hill, NC 27514

FOR Delinquent City Real Estate Taxes #510084050

⑈055292⑈ ⑈053⑈0⑈56⑈: 207990006310⑈

---

**TMSIC dba First Union Small Business Capital**
**RC # 7111500**

055292

**This check is in payment of** Delinquent City Real Estate Taxes

**Name:** Sun Enterprises

**Loan #:** 510084050

| Co/Sub | G/L | R/C | Amount |
|--------|--------|--------|-----------|
| 6540 | 0888701 | 300/310 | $66,308.13 |

PRECISION DATA PRODUCTS, INC.  (973) 857-2424 • FAX (973) 857-5229

**TMSIC dba First Union Small Business Capital**
**RC # 7111500**

055293

66-156
531

DATE September 12, 2001

PAY Four Thousand Nine Hundred Thirty and 65/100********* DOLLARS $ 4,930.65

TO THE ORDER OF
NAME: City of Memphis
ADDRESS: 125 N Main, Room 375
CITY, STATE, ZIP: Memphis, TN  38103-2080

First Union National Bank
Chapel Hill, NC 27514

FOR Delinquent City Personal Property Taxes #510084050

⑈055293⑈ ⑈053104561⑈ 2079900063105⑈

055293

**TMSIC dba First Union Small Business Capital**
**RC # 7111500**

**This check is in payment of**   Delinquent City Personal Property Taxes

**Name:**  Sun Enterprises

**Loan #:**  510084050

| Co/Sub | G/L | R/C | Amount |
|--------|--------|--------|--------|
| 6540 | 0888701 | 300/310 | $4,930.65 |

# AGREEMENT

This Agreement is made as of the 22nd day of October, 2003, by and among Sandhya Hotels, LLC, a Georgia limited liability company ("Sandhya"); Wachovia Commercial Mortgage, Inc., a New Jersey corporation fka The Money Store Commercial Mortgage Inc. ("Wachovia"), and Charles Morais and Sunil Mir ("Guarantors"), for the purpose of setting out and confirming the parties' agreement as to improvements to be made by Sandhya to the Shelby Inn, payments to be made by Sandhya to Wachovia during the period of such improvements, and purchase by Sandhya of Wachovia's interest in a certain promissory note executed by Sun Enterprises, Inc., all as described below.

## RECITALS:

WHEREAS, Sun Enterprises, Inc. ("Sun") is the owner of real property located at 1970 East Shelby Drive, Memphis, Tennessee, which property is more particularly described on Exhibit A hereto (the "Property"); and

WHEREAS, Sun has operated a motel under the name Shelby Inn (the "Inn") on the Property; and

WHEREAS, Sun is indebted to Wachovia pursuant to a promissory note dated as of December 28, 1995 in the original principal amount of $781,000 (the "Sun Note"), which note is secured by a deed of trust and security agreement recorded as Instrument No. FN 6678 in the Shelby County Register's office (the "Deed of Trust"); and

WHEREAS, Sandhya desires to operate, maintain, repair and renovate the Inn (the "Sandhya Work"), and further desires to purchase the Sun Note from Wachovia; and

WHEREAS, Wachovia and Sandhya desire to confirm their agreement as to the Sandhya Work and the purchase of the Sun Note; and

WHEREAS, the Guarantors desire to guarantee all obligations of Sandhya under this Agreement to secure the payment and performance thereof;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency is hereby acknowledged, Wachovia, Sandhya, and the Guarantors agree as follows:

1. Operation of Inn. Sandhya, at its sole cost and expense, will operate the Inn, with the knowledge and consent of Sun, in accordance with sound business practices, beginning on the date of this Agreement and continuing during the term of this Agreement and the Sandhya Work.

SuB-EXHIBIT

tabbies

A-6

2. <u>The Sandhya Work</u>. Sandhya, at its sole cost and expense, will perform the Sandhya Work it has determined to be necessary as generally described on Exhibit B attached hereto.

3. <u>Duration of Sandhya Work</u>. The period during which the Sandhya Work shall occur shall not be more than nine (9) months from and after December 1, 2003.

4. <u>Monthly Payments/Default</u>. During the period of the Sandhya Work, Sandhya shall pay to Wachovia the monthly cash sum of Five Thousand and no/100 Dollars ($5,000.00). The first such payment shall be made on the 1st day of December, 2003, and subsequent monthly payments shall be made on the 1st day of each month thereafter, for a total of not more than nine (9) months. Failure to make any monthly payment within five (5) days of its due date shall be a default hereunder.

5. <u>Consideration/Purchase of Sun Note</u>. The parties acknowledge that as of the date of this Agreement, the Sun Note is in default, and Wachovia has the right to foreclose the Deed of Trust. As consideration for the Sandhya Work and for Sandhya's commitment to purchase all of Wachovia's right, title and interest in and to the Sun Note, Wachovia will forbear from instituting foreclosure of the Deed of Trust or taking any other action that would interfere with Sandhya's right to purchase the Sun Note until the Purchase Date, as defined in Paragraph 6 below. Not later than the Purchase Date, Sandhya will purchase the Sun Note from Wachovia for the cash sum of Five Hundred Thousand and no/100 Dollars ($500,000.00. Upon receipt of the payment of $500,000.00 from Sandhya, Wachovia will transfer, assign and convey its interest in the Sun Note, the Deed of Trust and any other instruments or documents securing the Sun Note to Sandhya. The purchase price for the Sun Note does not include, and shall be in addition to, the $5,000 monthly payments described in Paragraph 4 above.

6. <u>Purchase of Sun Note</u>. The purchase of the Sun Note by Sandhya and the assignment of the Sun Note and Deed of Trust to Sandhya may occur at any time after the date of this Agreement, at Sandhya's option, after which time no additional monthly payments shall be due to Wachovia. Provided, however, that such purchase shall occur not later than August 31, 2004, the date that is thirty (30) days after the due date of the ninth monthly payment provided for in Paragraph 4 above (the "Purchase Date").

7. <u>Requirements Prior to Purchase of Note</u>. At all times prior to purchase of the Sun Note and while Sandhya is operating the Inn and conducting the Sandhya Work, Sandhya shall do each of the following:

      A. Deliver to Wachovia the name and address of any contractor and subcontractor who are to perform work at the Property or the Inn;

      B. Conduct, and require its contractors and subcontractors to conduct, all maintenance, repair and renovation activities in a good and workmanlike

manner, in accordance with all applicable laws and regulations, and to secure all governmental permits and approvals required for such work;

C.  Maintain, or provide for the maintenance of by Sun, hazard insurance and comprehensive general liability insurance covering the Property and the Inn in the amount required by the Deed of Trust, with Wachovia named as an additional insured as to all such coverage.  Sandhya shall deliver to Wachovia, at the inception of this Agreement and from time to time thereafter when the insurance is renewed, a certificate showing the existence and amount of such insurance and the name of Wachovia as an additional insured.  Sandhya shall deliver notice to Wachovia if any insurance on the Property is to be canceled.

D.  Maintain, or provide for the maintenance of by Sun or by Sandhya's contractors and subcontractors, such other insurance, including but not limited to workers' compensation insurance and general liability insurance, as is appropriate for their activities at the Property and the Inn, and deliver certificates showing the existence and amount of such insurance to Wachovia.

E.  Keep all City of Memphis and Shelby County real property taxes and personal property taxes on the Property and all personalty used in connection with the Property current; and

F.  Pay promptly when due all amounts due for materials and equipment purchased or leased for use in connection with the Sandhya Work, and will not allow any lien to be placed on the Property by any vendor, contractor or subcontractor, or by any person or entity who advances funds for completion of the Sandhya Work.  If a lien should be placed on the Property, Sandhya shall immediately notify Wachovia of such lien and shall pay amounts required to secure removal of the lien within not more than ten (10) days after receiving notice thereof.

8.  <u>Acknowledgment of SBA Loan</u>.  Sandhya and the Guarantors each acknowledge that they are aware that the Property is subject to a loan guaranteed by the U.S. Small Business Administration (the "SBA Loan"), which is junior in priority to the Wachovia loan and deed of trust, and that the SBA Loan will not be affected by Sandhya's purchase of the Sun Note.

Sandhya Agreement

Page 3 of  6 Pages

9. Acknowledgment of Investigation and Knowledge. Sandhya and the Guarantors acknowledge and agree that they have had full and unrestricted opportunity to make an independent investigation of the physical and financial condition of the Property and the Inn, that they are in possession of all such information about the Property and the Inn as they deem necessary in order to undertake the obligations set out in this Agreement, and that they undertake such obligations freely.

10. Warranties and Representations of Sandhya and Guarantors. Sandhya and the Guarantors warrant and represent that Sandhya is a limited liability company duly organized and existing under the laws of the state of Georgia, that it will maintain its existence as a foreign limited liability company authorized to do business in the state of Tennessee as required by law, that Guarantors are all the members of Sandhya, that the person(s) executing and delivering this Agreement and performing the obligations of Sandhya under this Agreement have been duly authorized to do so, and that this Agreement is legal, valid and binding on Sandhya and the Guarantors, enforceable against them in accordance with its terms. The person(s) authorized to execute and deliver this Agreement on behalf of Sandhya is/are Charles Morais. Sandhya has received the consent of Sun to enter the Property and conduct the Sandhya Work, which consent is set out on Exhibit C hereto.

11. Default by Sandhya or Guarantors. Sandhya shall be in default under this Agreement if Sandhya fails to make any monthly payment due to Wachovia within five (5) days of the due date, or fails to purchase the Sun Note by the Purchase Date, or fails to perform any of its obligations hereunder. Guarantors shall be in default under this Agreement if, after receiving notice that Sandhya is in default, they fail to make the payments or perform the obligations of Sandhya.

12. Default by Wachovia. Wachovia shall be in default under this Agreement if, upon receiving good funds from Sandhya for purchase of the Sun Note, it shall fail to transfer, assign and convey all its right, title and interest in the Sun Note and Deed of Trust to Sandhya.

13. Remedies for Default. Upon Default by Sandhya, Wachovia shall have the right to demand and receive payment of all amounts due from Sandhya, and performance of all obligations of Sandhya hereunder, by the Guarantors, as set out below. If such default should occur and not be cured within the applicable time, Wachovia shall have the right, but not the obligation, at its sole option, to elect to cease its forbearance and take such action as it deems proper to protect its interests as to the Sun Note, the Deed of Trust and the Property, including but not limited to foreclosure of the Deed of Trust. If Sandhya shall have complied with all its obligations hereunder, including payment of the purchase price for the Sun Note, and Wachovia shall fail to assign the Sun Note and Deed of Trust, Sandhya shall have the right to bring a suit for specific performance against Wachovia.

14. No Claim Against Wachovia. Neither Sandhya nor any Guarantor shall have a claim of any kind against Wachovia, whether for return of monthly payments, for the costs of the Sandhya Work, or for any other reason, except as expressly set out in Paragraph 12.

15. Attorney Fees and Expenses. Each party shall be responsible for its own attorney fees and expenses incurred in connection with the execution and performance of this Agreement, except that if Sandhya and/or the Guarantors shall be in default hereunder and Wachovia shall incur expenses to enforce this Agreement or otherwise protect its interests, then Wachovia shall have the right to recover such expenses, including reasonable legal fees, from Sandhya and the Guarantors. If Wachovia shall be in default hereunder, and Sandhya shall incur expenses to enforce the obligation of Wachovia to assign the Sun Note and Deed of Trust to Sandhya, then Sandhya shall have the right to recover such expenses, including reasonable legal fees, from Wachovia.

16. Assignment  The parties acknowledge that Wachovia has entered this Agreement in reliance upon the experience of principals of Sandhya. For that reason, Sandhya may not assign its rights and/or obligations under this Agreement without the express prior written consent of Wachovia, which consent may be withheld in Wachovia's sole judgment. Wachovia may assign its rights and obligations under this Agreement or under the Note and Deed of Trust, provided any such assignment shall be subject to the terms of this Agreement.

17. Guaranty. Guarantors each expressly and fully guarantee all obligations of Sandhya under this Agreement, including but not limited to payment of monthly amounts to Wachovia and payment of the amount set out above to purchase the Sun Note, as follows:

A.  Guarantors hereby guarantee the full and prompt payment by Sandhya of all amounts due hereunder, and the satisfactory performance by Sandhya of the Sandhya Work and all other obligations of Sandhya hereunder. If Sandhya should fail to make payment of any amount due to Wachovia within five (5) days of the date on which such payment is due, Wachovia shall give written notice of such failure to Guarantors, and Guarantors shall immediately pay to Wachovia the amount past due. If Sandhya should fail to perform the Sandhya Work or any other obligations provided in this Agreement, the Guarantors shall be responsible to see that such work is properly and promptly done and that such obligations are met. This is a guaranty of payment and performance by the Guarantors, and not only of collection.

B.  This guaranty is a continuing, absolute, unconditional, joint and several guaranty, binding on the Guarantors and, to the extent set out in Subsection D below, the wives of Guarantors, and their respective heirs, legatees, executors, administrators, legal representatives, successors, and assigns. It shall remain in full force and effect until all obligations of

Sandhya hereunder have been performed, and all amounts due to Wachovia for monthly payments and for purchase of the Sun Note have been paid.  If any Guarantor shall be entitled by applicable law to terminate this Guaranty, no such termination shall affect such Guarantor's liability for all obligations in effect at the time of termination and all extensions and renewals thereof, or the liability of any other Guarantor for such obligations.

C.  The failure of any person to sign this guaranty shall not affect the liability of any person who did sign.  Wachovia may enforce this guaranty against any Guarantor separately or against two or more Guarantors jointly, for any part of the obligations of Sandhya, at any time or from time to time.

D.  The wives of Guarantors join in this Agreement solely for the purpose of subjecting all rights in property, both real and personal, which they may own jointly with their husbands, to the obligations of their husbands as Guarantors under this Agreement.

18.  This Agreement, and all acts and transactions hereunder, shall be governed as to validity, enforcement, construction, effect, and in all other respects, by the law of the state of Tennessee. Sandhya and Guarantors hereby consent and submit to the jurisdiction and venue of state and federal courts sitting in Shelby County, Tennessee, with respect to the interpretation, performance and enforcement of this Agreement.

In witness whereof, the parties have caused this Agreement to be executed by authorized representatives as of the date written above.

WACHOVIA COMMERCIAL MORTGAGE, INC.,
fka The Money Store Commercial Mortgage Inc.          SANDHYA HOTELS LLC

By:                                                  By:  Sunil Mir
Printed Name: Michael K. Cummer                      Printed Name: Sunil Mir
Title: Special Assets Manager                        Title:

_____
Charles Morais, Guarantor                            Sunil Mir, Guarantor

_____                              _____
, Wife of Charles Morais                             , Wife of Sunil Mir

Sandhya Agreement                                    Page 6 of 6 Pages

PROPERTY DESCRIPTION

Parcel I:

A certain tract or parcel of land lying in Memphis, Shelby County, Tennessee, on the northeast quadrant of the I-55 and Shelby Drive Interchange, and being a part of the same parcel of land conveyed to Pan-Hans Properties Ltd. by Greenbriere Developments, Inc. by deed duly recorded at Instrument No. H8 2546, Shelby County Register's Office and more particularly described as follows:

Beginning at a corner post in the north right-of-way line of Shelby Drive, said corner post at a break in alignment of the right-of-way fence, where the Shelby Drive entrance ramp to I-55 North begins; thence with said fence North 55 deg. 20 min. 10 sec. West 327.51 feet to a corner post and break in the fence alignment; thence North 47 deg. 35 min. 43 sec. West 357.55 feet to an iron pin in said fence line; thence with the south line of Gardenview Subdivision, section E (recorded in Plat Book 24, Page 22) North 86 deg. 56 min. 03 sec. East 572.31 feet to an iron pin; thence South 03 deg. 03 min. 57 sec. East 456.81 feet to an iron pin in the aforementioned right-of-way fence paralleling Shelby Drive; thence with said fence South 88 deg. 18 min, 37 sec. West 62.56 feet to the point of beginning.

PARCEL II:

A certain tract or parcel of land lying in Memphis, Shelby County, Tennessee, on the northeast quadrant of the I-55 and Shelby Drive Interchange and being on a part of the same parcels of land conveyed to Pan-Hans Properties, Ltd. by Greenbriere Developments, Inc. by deed duly recorded at Instrument No. H8 2546, Shelby County Register's Office and more particularly described as follows:

Beginning at the southeast corner of a 3.56 acre tract, said corner marked by an iron pin in the north right-of -way of Shelby Drive and located 62.56 feet east along said right-of-way of a corner post at the beginning of the entrance ramp from Shelby Drive to I-55 North; thence North 03 deg. 03 min. 57 sec. West 40.0 feet to an iron pin; thence North 88 deg. 18 min. 37 sec. East 423.68 feet to an iron pin; thence South 03 deg. 03 min. 57 sec. East 40.0 feet to an iron pin; thence South 88 deg. 18 min. 37 sec. West 423.68 feet to the point of beginning.

Parcel II is a non-exclusive easement only.

Exhibit A

EXHIBIT B TO AGREEMENT
General Description of Repairs/Renovations

Painting
Install new carpet
Repair/replace plumbing fixtures as needed
Replace furniture/fixtures as needed
Install new television sets as needed
Other work as needed

## ACKNOWLEDGMENT AND CONSENT

The undersigned Amit K. Ray and Tapati Ray, being the stockholders and officers of Sun Enterprises, Inc., owner of the Shelby Inn located at 1970 East Shelby Drive, Memphis, Tennessee (the "Inn"), hereby acknowledge that they have agreed on behalf of Sun Enterprises, Inc. and themselves individually that Sandhya Hotels, LLC, a Georgia limited liability company ("Sandhya"), will take over operation and management of the Inn and will perform or cause to be performed certain repairs, maintenance and renovation to the Inn. The undersigned give their permission for principals of Sandhya and contractors employed by Sandhya to enter on and occupy the property on which the Inn is located and the Inn for such purposes and to perform such repairs, maintenance and renovation as Sandhya deems necessary or desirable.

Amit K. Ray, Individually and as President
of Sun Enterprises, Inc.

Tapati Ray, Individually and as Secretary of
Sun Enterprises, Inc.

Date   October 23, 2003

Exhibit C



# Hanover
# Walsh
# Jalenak
# & Blair PLLC
Attorneys at Law

Joseph Hanover (1888-1984)
David Hanover (1899-1963)
J. Alan Hanover
William M. Walsh
James B. Jalenak*
Allen S. Blair
Micheal E. Goldstein
Edward J. McKenney, Jr.
James R. Newsom III
John Kevin Walsh
James A. Johnson Jr.**
Barbara B. Lapides
Delisa Flowers Eddings
E. Nicole Trail**
Todd A. Snow
Carmel A. Morgan

Helyn L. Keith, Of Counsel

* Also Admitted in New York
** Also Admitted in Arkansas

October 27, 2004

<u>VIA CERTIFIED MAIL,</u>
<u>RETURN RECEIPT REQUESTED</u>
<u>AND FIRST CLASS POSTAGE PREPAID</u>

Sun Enterprises, Inc.                     Tapati Ray, M.D.
% Dr. Amit K. Ray                         102 Canterbury Place
102 Canterbury Place                      Ridgeland, MS 39157-8731
Ridgeland, MS 39157-8731

Dr. Amit K. Ray
102 Canterbury Place
Ridgeland, MS 39157-8731

Re:     Sun Enterprises, Inc.

Dear Sun Enterprises, Inc., Dr. Ray and Dr. Ray:

I enclose for your information my letter dated October 13, 2004, to Sandhya Hotels
("Sandhya"), LLC, Sunil Mir and Charles Morais together with my letter of today to those
persons.  I must advise you that you remain in default on the underlying note executed by
Sun Enterprises, Inc. and guaranteed by Dr. Amit K. Ray and Tapati Ray, M.D.  That obligation
has not been released by Wachovia Commercial Mortgage, Inc.  In the event that a
satisfactory resolution cannot be reached with Sandhya Hotels, LLC, Charles Morais and Sunil
Mir, legal action will be necessary to enforce their obligations and yours as well.

Yours very truly,

James R. Newsom III

cc:     Mr. Douglas Good



SUB EXHIBIT

A-7

Fifth Floor · Falls Building     22 North Front Street     Memphis, Tennessee 38103-2156
Telephone 901.526.0621     Telecopier 901.521.9759     www.hanoverwalsh.com

FILE COPY



Hanover
Walsh
Jalenak
& Blair PLLC
Attorneys at Law

Joseph Hanover (1888–1984)
David Hanover (1899–1963)
J. Alan Hanover
William M. Walsh
James B. Jalenak*
Allen B. Blair
Michael E. Goldstein
Edward J. McKenney, Jr.
James R. Newsom III
John Kevin Walsh
James A. Johnson Jr.**
Barbara B. Lapides
Delisa Flowers Eddings
E. Nicole Trail**
Todd A. Snow
Carmel A. Morgan

Helyn L. Keith  of counsel

* Also Admitted in New York
** Also Admitted in Arkansas

October 13, 2004

Mr. Sunil Mir
Sandhya Hotels, LLC
2767 Windy Hill Road
Marietta, GA 30067

Mr. Charles Morais
Sandhya Hotels, LLC
2767 Windy Hill Road
Marietta, GA 30067

Re:    Shelby Inn Property

Dear Sandhya Hotels, LLC, Messrs. Mir and Morais:

Mr. Mir's letter to Mike Cummer dated August 20, 2004, a copy of which I enclose, has been forwarded to me for response by Wachovia Commercial Mortgage, Inc. ("Wachovia").  Please direct your future correspondence to my attention.

Mr. Mir's letter states that Sandhya Hotels, LLC ("Sandhya") has painted all the rooms and cleaned up the property.  Further, Sandhya is in the process of putting new furniture and carpets in all the rooms with the aim of gaining a franchise affiliation for the hotel.  Mr. Mir's letter adds that it will take an additional nine months to one year to renovate the property.

Mr. Mir's letter does not address the remaining obligations of Sandhya guaranteed by Sunil Mir and Charles Morais, individually, set forth in the Agreement dated October 22, 2003 (the "Agreement"), by and among Sandhya, Wachovia and Charles Morais and Sunil Mir, a copy of which I enclose.

In the Agreement, among other things, Sandhya agreed to complete the Sandhya Work, as defined in the Agreement, on or before August 1, 2004 and to purchase the Sun Note for the cash sum of $500,000.00 no later than August 31, 2004.  Messrs. Morais and Mir agreed personally to guarantee those obligations.  Mr. Mir's letter does not explain why the improvements to the property have not yet been completed or why the agreed $500,000.00 payment was not made in a timely manner, as agreed.

Wachovia needs to have a more detailed report from Sandhya concerning the work done to date and the work that remains to be done.  Wachovia also needs to have an explanation of the reasons why the agreed $500,000.00 payment was not made to Wachovia in a timely

FILE COPY

HANOVER, WALSH, JALENAK & BLAIR, PLLC     Page 2                    October 13, 2004

manner.  After Wachovia receives your response, including your proposals for fulfilling your
obligations, Wachovia will advise you of its position.

Yours very truly,

James R. Newsom III

Enclosures

cc:     Mr. Douglass Good

Q:\JRN\WPF\Wachovia Ray 9538\Letter to Sunil Mir and Charles Morais 101304.wpd



# Hanover
# Walsh
# Jalenak
# & Blair PLLC
## Attorneys at Law

Joseph Hanover (1888-1964)
David Hanover (1899-1963)
J. Alan Hanover
William M. Walsh
James B. Jalenak*
Allen S. Blair
Michael E. Goldstein
Edward J. McKenney, Jr.
James R. Newsom III
John Kevin Walsh
James A. Johnson, Jr.**
Barbara B. Lapides
Delisa Flowers Eddings
E. Nicole Trail**
Todd A. Snow
Carmel A. Morgan

Helyn L. Keith Of Counsel

* Also Admitted in New York
** Also Admitted in Arkansas

October 27, 2004

<u>VIA CERTIFIED MAIL,</u>
<u>RETURN RECEIPT REQUESTED</u>
<u>AND FIRST CLASS POSTAGE PREPAID</u>

Sandhya Hotels, LLC                    Mr. Charles Morais
℅ Mr. Sunil Mir                        Sandhya Hotels, LLC
2767 Windy Hill Road                   2767 Windy Hill Road
Marietta, GA 30067                     Marietta, GA 30067

Mr. Sunil Mir
Sandhya Hotels, LLC
2767 Windy Hill Road
Marietta, GA 30067

Re:    Shelby Inn Property

Dear Sandhya Hotels, LLC, Messrs. Mir and Morais:

On October 13, 2004, I sent the enclosed letter to Sandhya Hotels ("Sandhya"), LLC, Sunil Mir and Charles Morais.  The letter referred to Mr. Mir's letter to Mike Cummer dated August 20, 2004.  Mr. Mir had told Mr. Cummer that Sandhya has painted all the rooms and cleaned up the property.  Further, Mr. Mir said that Sandhya is in the process of putting new furniture and carpet in all the rooms with the aim of gaining a franchise affiliation for the hotel.  Mr. Mir's letter stated that it would take an additional nine months to one year to renovate the property.

Mr. Mir's letter did not address the remaining obligations of Sandhya guaranteed by Sunil Mir and Charles Morais, individually, set forth in the Agreement dated October 22, 2003 by and among Sandhya, Wachovia Commercial Mortgage, Inc. ("Wachovia") and Charles Morais and Sunil Mir (the "Agreement") in which Sandhya agreed to complete the Sandhya Work, as defined in the Agreement, on or before August 1, 2004 and to purchase the Sun Note for the cash sum of $500,000.00 no later than August 31, 2004.  Messrs. Morais and Mir agreed personally to guarantee those obligations.  Mr. Mir's letter did not explain why the

FILE COPY

HANOVER, WALSH, JALENAK & BLAIR, PLLC    Page 2                    October 27, 2004

improvements to the property have not yet been completed or why the agreed $500,000.00 payment was not made in a timely manner, as agreed.

My letter of October 13 stated that Wachovia needs to have a more detailed report from Sandhya concerning the work done to date and the work that remains to be done.  Wachovia also needs to have an explanation of the reasons why the agreed $500,000.00 payment was not made to Wachovia in a timely manner.  I have received no response to my letter.

Since we have not heard from you in the two weeks since the date of my letter, Wachovia is concerned that Sandhya Hotels, LLC, Charles Morais and Sunil Mir, who have already failed to perform their obligations under the Agreement in a timely manner, do not intend to cure that failure of performance by making the payments required under the Agreement.  Unless we receive a response from you within fifteen (15) days of the date of this letter, that is, by November 11, 2004, Wachovia will assume that Sandhya Hotels, LLC, Charles Morais and Sunil Mir do not intend to cure their default under the Agreement and that legal action will be necessary to enforce those obligations.  We hope to receive an appropriate response from you so that legal action will not be necessary.

Yours very truly,

James R. Newsom III

Enclosures

cc:    Mr. Douglas Good

Q:\JRN\WPF\Wachovia Ray 9538\Letter to Sunil Mir and Charles Morais 102704.wpd